One second. All right, Mr. Spears, you have reserved two minutes for rebuttal. Thank you, and good afternoon. May it please the Court, Brian Spears for Paul Fishbein. The principal issues raised in this appeal that I want to address this morning relate to evidence that the agencies, in this case, the housing authorities, paid for and received housing for low-income tenants. The agencies, in short, got what they paid for. And I'd like to focus my remarks on how the district court disregarded the importance of this evidence in two ways. First, the district court instructed the jury that any argument that the victim received that benefited the party is not a defense. That was respectfully an incorrect statement of the law. It was devastating to the defense, and it was a reversible error. Second, at sentencing, the district court refused to consider the fact that the agencies, again, got what they paid for, and that was legally incorrect as well. Focusing on the trial issues in particular, it's interesting to think about the history of this case, because initially this benefit of the bargain concept was raised by Mr. Fishbein's trial counsel, and the district court agreed that it was a relevant subject. It came up in the context of a motion to dismiss. The district court said, I'm not going to dismiss the indictment, but you'll have your chance to pursue this defense at trial. At trial, the district court changed course. It excluded evidence that, in fact, the agency... Isn't it the law now that it is irrelevant whether a victim gets the benefit of the bargain? Respectfully, Your Honor, no, that's not the law. Since we filed the appeal, the law has developed, certainly, and that began with the Supreme Court's decision in Concesa versus the United States. But that case really focused on pecuniary harm, economic harm. There still needs to be a showing that a defendant, for mail and wire fraud purposes, contemplated harm, and harm that would go to, quote, an essential element of the bargain. And that is evident in the case of the United States versus Runner, which, Judge Chin, you sat on the panel. It's a case decided after Concesa in July of 2025 of this year. And Runner is indeed very instructive here. When you look at the opinion, it shows that, in fact, in that case, the defendant was allowed to argue that the victims received what they bargained for. Now, the jury ultimately rejected that defense, and in that particular case, the victims very undeniably did not receive what they paid for. But the point is that this Court never suggested in Runner that the benefit of the bargain argument was unavailing. And in contrast here, Mr. Fischbein was not permitted to make the argument. And even worse, the district court instructed the defense right out of the case. And so that was certainly not harmless error and requires reversal. The government has relied on the case of the United States versus Schwartz, and I wanted to talk about that case as well as the case that was decided several years ago, but is very consistent with Concesa's. It talks about how the government doesn't need to show economic harm or pecuniary harm. But nevertheless, the government still needs to show that the defendant contemplated some harm. And just by way of reference to the jury instructions that this Court considered on appeal, the jury was told, while the government must prove the defendant contemplated harm in order to establish the scheme to defraud, it is not necessary that this harm be monetary in nature. That's Concesa's. But the instructions went on to say it is sufficient if the contemplated harm goes to some essential element of the bargain. And that was – Can I just ask you, so what is your view of why there hasn't been a showing of harm to an essential element of the bargain? In the briefing, you talk about the idea that the purpose of the program is to provide housing, low-income housing. That is part of the purpose, but the purpose was to do that through these payments to owners of properties to get them to rent. And so accepting the view that your client was not an owner, why is there not harm there still? Right. So I think we have to look at what the misrepresentation was. And so I think there is a question, was the misrepresentation that we're not disputing for purposes of appeal with respect to three properties, there was a misrepresentation that my client was the owner of the property. He provided landlord services, but we accept for purposes of appeal that he was not the owner. So the question then under the law now is whether that misrepresentation went to an essential element. And the evidence would have shown, if the defendant were permitted to present it, that in fact it didn't matter to the agencies because even after Mr. Fishbein was indicted, the agencies continued their contractual relationship with him and continued to pay him. So I think the issue that the jury should have been afforded the opportunity to decide was whether the misrepresentation regarding ownership went to an essential element of the bargain. And we submit that the jury should have been instructed that it could consider that. And if it determined that it didn't go to an essential element of the bargain, then the government would fail to prove its mail-on wire fraud charges. So that's the essence of our argument with respect to the trial and the jury instructions. I do want to touch on this issue as it relates to sentencing as well. The district court, again, sort of at odds with where the district court started in the very beginning of the proceedings. By the time it came to sentencing, the district court was very opposed to any consideration of the notion that the agencies received what they paid for. And this impacted the sentence not only in the calculation of the guideline range, but also with respect to whether the agency's receipt of what they paid for could be considered even for purposes of a variance or would impact the sentence in some way. The district court dismissed the factor as, quote, specious, made no findings as to whether Mr. Fishbein was entitled to an offset of loss, and made no findings with respect to whether that fact could impact and warrant a variance from the guidelines. And focusing in particular on the loss calculation, this had a significant impact on the sentencing. It was the difference between a 16-level enhancement versus an 8-level enhancement. And as we've argued in our brief, application note 3 talks about credits against loss and requires the district court to reduce loss by the fair market value of services provided. Now, again, I recognize there are issues with respect to Mr. Fishbein being the owner of the properties, but he did provide landlord services. He did provide tenancies to many in need of housing, which was the entire purpose of the program. The district court didn't address this offset, and that was there. There are no findings with respect to that. The government takes the position that Mr. Fishbein was not an intended recipient of the funds and, therefore, no offset would apply. We've briefed this question and explained why, in fact, Mr. Fishbein would be entitled to an offset and that this was an issue that the district court should have addressed and made findings on. I see that my timing's up. I've reserved two minutes for rebuttal. Can I ask one quick question? Yes, Your Honor. I mean, this is a consolidated appeal, so there is an appeal that relates to the district court's denial, without prejudice, of a motion for returning property. That wasn't addressed in the brief at all, and so I guess I'm asking, are you abandoning that? You're waiving that appeal at this point? I certainly haven't addressed it, Your Honor. I don't know that I was appointed to represent Mr. Fishbein in connection with that particular appeal, but I'm not pursuing that for purposes of this appeal. Okay. Thank you. Thank you, Your Honor. Ms. Kushner? May it please the Court, Sarah Kushner for the United States. I represent the government on appeal and represented the government before the district court. The defendant's arguing, Fishbein is arguing, that the government still has to prove that some type of harm was contemplated here. But all of this is resolved by the district court. And in fact, the situation here is even more egregious than in Cusisis, because in Cusisis, the fraudsters were at least a legitimate company and the owner of a legitimate company that provided the painting services it was contracted to do. But the court there found that there was still fraud, because it lied about the use of the disadvantaged business, the involvement of a disadvantaged business company. And here, there was no legitimate service ever provided. The defendant lied about being the owner of a housing property in order to obtain money from the victims, the agencies in this case. Under Cusisis, there is no further inquiry that needs to be made to find wire fraud or mail fraud. And that's exactly what happened here. With respect to the district court's instruction that was just addressed, the instruction that Fishbein is challenging was that there could not be any consideration. Any argument that the victim received the benefit of the bargain is not a defense to fraud in this case. But that is exactly what Cusisis held. So it is a perfectly correct statement of the law, and there was no error here. Now, what I understand, Mr. Spears, to have just been arguing, is that although Fishbein is not disputing that there was a misrepresentation that he was the owner of the property, the question is whether that misrepresentation went to an essential element. That goes to materiality. And the defendant has never been challenging materiality, neither the instruction on materiality or any arguments he was allowed to make at trial. And so there was no challenge to the materiality instruction. And the defendant was perfectly free at trial to argue that it didn't matter to the agencies whether or not there was any – whether or not the person receiving the payments, the rent payments from the agencies, was the owner. And, of course, that's a material aspect of the bargain. The entire point of the rental assistance program was to be paying rent to landlords, to the owners of the property. So to the extent that the defendant is now – What's the point to provide housing to homeless individuals and low-income individuals? And that purpose was fulfilled, right? No, that purpose was not fulfilled here. Fishbein didn't provide anything. He had nothing to provide. He wasn't the owner of any of these properties. What maybe he created were squatters in properties that were owned by other people. People didn't move into the places for which he was subsidized? People – there were people that lived in those properties. Those properties were not his to give away. He didn't provide to the extent there was a roof. That's a different issue. My first question, though, is didn't, in fact, low-income homeless people get housing as a result of his actions? I would argue that it was not a result of his actions. It was as a result of the fact that he was standing outside of some property saying, move on in here, and there was someone that actually went in and effectively became a squatter. But what the agencies are trying – the purpose of the program is to provide stable housing. There couldn't be anything farther from stable housing than a squatter living in a property thinking that the property is owned by someone who's never owned that property. So neither the agencies nor any individuals who happened to have stepped under that roof for some period of time received any benefit of the bargain. I mean, I think that's – you might be taking a bit of an extreme position here. I mean, these units were lived in. I might be getting this confused, but weren't – there were inspections required. This wasn't just people coming into abandoned buildings and squatting, correct? It essentially was. The agencies are not the people that choose the homes. It's for the tenants themselves to go out and find homes, and then the landlord of that property submits paperwork to the agencies to receive the rent payments. So it's reviewed in some way. It's not just come on into this building and live here, correct? It essentially is with respect to at least the HRA program. There's no oversight by HRA as to – they're not involved in finding or placing the tenant in the apartment. Once the tenant is eligible and finds a landlord that is participating in the agency's rental program, then the tenant submits – the tenant and the landlord submit paperwork so that the rent payment goes to the owner of the property. But here, I mean, even on the record, there were no services provided by Fishbein. To the extent there's any evidence in the record about the condition of the properties, it shows that they were dilapidated, unlivable. One tenant moved in and was only there for two weeks because of the condition of the home, and that's not surprising because Fishbein, who claims to be the owner, was not and had no incentive to maintain any sort of livable condition here. But I don't think it's an extreme situation. It's not extreme. I guess just from my point of view, I don't think you have to reject that perhaps some aspect of what the program was intended to do was satisfied here to make your position that the agencies didn't get the benefit of their bargaining. I guess that's what my point was. You don't have to say that nothing happened. He played no role. It was completely against everything the agency wanted. No one was brought up, you know, given housing as a result of this. That's, I guess, what my point was, but that's – As I said, I don't think you need to take that position to support your claim, was my point. And with respect to the loss amount, I mean, the defendant had the opportunity to prove that there was value in any purported service that he provided. There was a trial. There was multiple rounds of briefing before sentencing that resulted in a fatico hearing. So at every stage, the defendant had every opportunity he could to present evidence that showed the purported service he was providing had some value. And he didn't do that. The only thing he's ever argued is that what he provided is worth all of the money he received in rental payments. And that statement on its own shows how ridiculous his position is that he provided services of value, because if there's even a world in which we could find that he provided any type of service, it certainly was not the full fair market value of all of these properties that he never owned. Unless the Court has any further questions, the Government will rest on the papers. Thank you. Mr. Spears, you have two minutes for rebuttal. Thank you, Your Honor. Just a few points here. First is the Government is proposing an incredibly broad reading of Casesis, which, respectfully, this Court should reject. Casesis did not eliminate the notion that there needs to still be some contemplated harm. Casesis did clarify that the Government need not prove that there be contemplated economic harm. That's what the case was about. Now the Government is trying to expand that to the elimination of all contemplated harm, which would essentially require overruling numerous decisions. Casesis says that injury is occurred when a fraudster obtains from an owner by a false representation of a fact which he deems material, property which he would not otherwise have parted with, upon the terms which he is thus induced to accept. That seems to me to be pretty broad. It doesn't seem to me that you need to think that you're hurting the person, just that they wouldn't have made this decision but for the fraudulent statement. Right. I think the question presented to the Supreme Court was about whether economic harm needed to be proved. The Supreme Court does make that statement as well. So you're saying that you still have to prove that the city was not just out of pocket for the funds that they would not have parted with but for the false statement. You have to prove that they got a bad deal on top of it. The government has to prove that the defendant contemplated harm going to an essential element of the bargain, which would essentially be, was ownership an essential element of the bargain? That was the factual question that my client was not allowed to present to the jury, and the jury was specifically instructed to the contrary. No, I mean, it seems to me what you wanted to say was that there is a benefit to this bargain, not whether it was ownership, a material term upon which the city acted. I do think that there's a, we may be talking about two sides of the same coin. I mean, there is the materiality point, and I think Cassis sort of puts more emphasis on materiality. I understand that. But there's also the question of intent, and under the Second Circuit law, which I would submit has not been reversed by Cassis, intent requires contemplated harm going to an essential element of the bargain. But by this theory then, so if Mr. Fishbein or Fishbein, I don't know which it is, which is it? I've been using Fishbein. So if Fishbein decided to put somebody in my apartment while I was on vacation, he would be able to say that he hadn't committed this crime because the tenant got my home for the duration. So what I'm saying is that, and I think the problem here, the complication in this case is that the government has focused on the agencies as being the victim when what you're describing is, in your scenario, you're the victim. So the owners. Well, we can both be the victim, I suppose. But the agencies ultimately receive what they paid for. I mean, they did get habitable rental units. Well, not if I decide to sue the agency and say, by the way, you've got free usage of my apartment for a month, and so I'm here for a reimbursement. So, I mean, it seems to me that the agencies are on the hook if the true owners decide that they want to be compensated, right? One of the confounding things about this case is that the owners were, except for three, were generally had, just didn't surface. It didn't show any interest in the property. That's a pretty obvious point, though, isn't it? That if you're paying the wrong person for services, it's odd for the person to say, yeah, but services were provided. I understand, Your Honor, but our view is that that didn't seem to matter to the agencies. And, again, this was evidence that was excluded. The agencies continued their relationship with Mr. Fishbein. They continued to pay him even after he was indicted, even knowing about these questions about ownership. That evidence was precluded. But that goes to the point, and it would have undermined the government's claim of materiality, and it would have undermined the notion that the agencies did not receive the benefit of their bargain. Is there no further questions? Thank you. Thank you. Thank you both. That will conclude this argument. We have one other that is on submission. We'll reserve on that as well as this one.